UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN D. LESTER, JR.,

                    Plaintiff,

       v.

MOUNT PLEASANT COTTAGE SCHOOL
UNION FREE SCHOOL DISTRICT,

                Defendant.

No. 19-CV-5247 (KMK)

OPINION & ORDER

Appearances:

Stephen D. Lester
Dobbs Ferry, NY
*Pro se Plaintiff*

Mark C. Rushfield, Esq.
Shaw, Perelson, May & Lambert, LLP
Poughkeepsie, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Stephen D. Lester, Jr., ("Plaintiff") brings this Action against Mount Pleasant Cottage

Union Free School District ("Defendant"), alleging that Defendant created a hostile work

environment and failed to reasonably accommodate Plaintiff's disability, in violation of the

Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq*., and the New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*, when he was terminated

from his position as a school safety monitor in February 2018.  (*See generally* Second Am.

Compl. ("SAC") (Dkt. No. 37).)  Before the Court is Defendant's Motion To Dismiss (the

"Motion"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  (*See* Not. of Mot.

(Dkt. No. 40).)  For the reasons discussed below, the Motion is partially granted and partially denied.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC") and the exhibits incorporated therein and are assumed to be true for the purposes of this Motion.  *See Sierra Club v. Con-Strux LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (accepting "all factual allegations as true" for the purposes of a motion to dismiss and deeming a complaint to include "any written instrument attached to it as an exhibit" (citations and quotation marks omitted)).

Plaintiff has been employed by Defendant since 1999, initially as a teacher's aide for one year and, subsequently, as a safety monitor, at Mount Pleasant Cottage School, a public school that primarily serves a special-needs and economically disadvantaged student population.  (SAC ¶¶ 12–13.)[1]  According to Plaintiff, a safety monitor's duties include monitoring activity in the building, maintaining order, and overseeing the safety of students, teachers, and staff within the monitor's assigned building.  (*Id*. ¶ 14.)  Plaintiff claims that in 2003, while he was attempting to "manage a disturbance among the students in the hallway," he fell down a short flight of steps and broke a bone in his ankle.  (*Id*. ¶¶ 2–3.)  Plaintiff experienced subsequent complications of "advanced avascular necrosis" that resulted in chronic ankle, knee, and hip pain.  (*Id*. ¶ 4.)  He was declared permanently partially disabled in a workers' compensation proceeding in 2005.  (*Id*.)

---

[1] When citing to paragraph numbers, the Court refers to the "Statement of Facts" appended to the SAC, beginning at ECF page number 10.  For any page number citation to the SAC, the Court refers to the ECF-stamped page number.

Plaintiff's disability allegedly limits his ability to sit or stand for long periods of time, to walk long distances, or to navigate up and down stairs.  (*Id.* ¶ 5.)  However, he was still able to perform "the essentials" of his duties as a safety monitor, as long as he was provided with adequate accommodation for "periodic absences" due to pain and necessary medical appointments.  (*Id.* ¶ 6.)  Plaintiff claims that his supervisors were aware of his disability and that he "always followed proper procedures" for notifying his supervisors of any anticipated leave.  (*Id.* ¶ 8.)  Plaintiff alleges that taking unpaid leave was a "reasonable accommodation" that permitted him to perform the "major responsibilities" of his job.  (*Id.* ¶ 11.)

In 2016, Defendant allegedly eliminated several other staff positions in the building, which resulted in greater responsibility for Plaintiff.  (*Id.* ¶ 15.)  Plaintiff's new duties included some administrative and clerical work, and he began serving as a "liaison" between the school officials and "several outside groups."  (*Id.*)  These new duties were allegedly difficult for Plaintiff because they required him to leave his station and walk more often, including up and down stairs.  (*Id.* ¶ 16.)  Plaintiff alleges that the new, additional activity "exacerbated" his condition.  (*Id.*)  At some point in 2016, Plaintiff was told that he could no longer work the breakfast shift because of how much time he took off from work.  (*Id.* ¶ 20.)  Taking away the breakfast shift was financially difficult on Plaintiff because it used to provide him with "additional compensation."  (*Id.* ¶ 25.)  According to Plaintiff, before 2016, he had never been informed that his medical absences were problematic, and he had been taking similar amounts of leave for "over 10 years."  (*Id.* ¶ 21.)  Moreover, Plaintiff had allegedly received positive evaluations throughout his career and was a "highly valued employee" because of his ability to mediate confrontations and diffuse "potentially volatile situations" between "aggressive" students.  (*Id.* ¶ 17; *see also id.* ¶¶ 18–19.)  The news was surprising to Plaintiff because, prior to

3

this, the only feedback he received regarding his absences was that they needed to be properly documented, which Plaintiff alleges he did.  (*Id.* ¶¶ 22–23.)

Plaintiff also alleges that he saw "many and repeated, off-hand, cynical gestures and comments by various staff regarding the limitations imposed by [his] disability and [his] need for leave related to [his] disability."  (*Id.* ¶ 26.)  The assistant superintendent would allegedly look at Plaintiff's leg and laugh.  (*Id.* ¶ 27.)  The superintendent would ask Plaintiff about his health issues in a "tone of voice indicating that he did not believe that [Plaintiff] truly was partially disabled."  (*Id.* ¶ 28.)  Plaintiff alleges that these comments were "demeaning and humiliating" and resulted in stress that "likely exacerbated" his condition.  (*Id.* ¶ 29.)

Plaintiff claims that his disability continued to flare up, resulting in swelling and pain, between 2016 and his termination in 2018.  (*Id.* ¶ 30.)  Plaintiff's doctors and physical therapists allegedly repeatedly asked Defendant to place Plaintiff on "lighter duty," such as by having smaller assigned spaces to monitor.  (*Id.* ¶ 33.)  According to Plaintiff, no one responded to these requests, so he continued to experience additional flare-ups, which necessitated more time off work.  (*Id.* ¶¶ 34–35.)

On February 5, 2018, Plaintiff was called into a meeting with the superintendent, assistant superintendent, and principal, and was told that he would be suspended without pay until the next school board meeting on February 14, 2018.  (*Id.* ¶ 36.)  They also told Plaintiff that they would recommend his termination to the school board due to "excessive absences." (*Id.*)  Plaintiff was notified that his health insurance would expire in 30 days and instructed him to collect any personal belongings and vacate the building immediately.  (*Id.* ¶¶ 37–38.) According to Plaintiff, he never received a written notice of the school board's decision, nor did he receive a formal notice of termination from Defendant.  (*Id.* ¶ 39.)  Based on the above,

4

Plaintiff alleges that he was improperly discriminated against on the basis of his disability. (*Id.* ¶ 41.)

### B.  Procedural Background

Plaintiff initiated this Action by filing a Complaint on May 31, 2019. (*See* Compl. (Dkt. No. 2).) Plaintiff submitted an Application to proceed in forma pauperis ("IFP"), (Dkt. No. 1), which was granted on June 4, 2019, (Dkt. No. 3). In response to a Pre-Motion Letter from counsel for Defendant, (Dkt. No. 11), Plaintiff requested to amend his Complaint, (Dkt. No. 13), which the Court permitted him to do, (Dkt. No. 14). The Amended Complaint was filed on September 12, 2019. (*See* Am. Compl. (Dkt. No. 15).)

In response to another Pre-Motion Letter, the Court set a briefing schedule. (Dkt. No. 18.) Plaintiff again requested an opportunity to amend, which the Court granted. (Dkt. No. 36.) The SAC was filed on December 19, 2019. (*See* SAC.) In response to a third Pre-Motion Letter, the Court set another briefing schedule. (Dkt. No. 39.)

Defendant filed its Motion on January 28, 2020. (*See* Not. of Mot.; *see also* Aff'n of Mark C. Rushfield, Esq. in Supp. of Mot. ("Rushfield Aff'n"); Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. Nos. 41–42).) Plaintiff filed an Opposition on April 2, 2020. (*See* Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 46).) Defendant filed a Reply on April 9, 2020. (*See* Def.'s Reply Mem. in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 47).)

## II.  Discussion

Defendant argues that the Court does not have subject matter jurisdiction under Rule 12(b)(1), because Plaintiff has already filed an administrative complaint regarding his termination, which resulted in a finding of "no probable cause," thereby, pursuant to New York law, foregoing his opportunity to sue in this Court; that Plaintiff failed to allege the timely filing

of a notice of claim as required by New York Education Law § 3813(1); that Plaintiff is barred

by the one-year statute of limitations articulated by New York Education Law § 3813(2-b); that

Plaintiff's federal reasonable accommodation and hostile work environment claims are barred

because they were not exhausted through the filing of Plaintiff's administrative complaint; and

that, in any event, Plaintiff fails to plausibly plead an unlawful hostile work environment or a

failure to accommodate claim.  (*See generally* Def.'s Mem.)

    A.  Standards of Review

    "The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively

identical."  *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5,

2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.

2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court

must accept all factual allegations in the complaint as true, and draw inferences from those

allegations in the light most favorable to the plaintiff."  *Gonzalez v. Option One Mortg. Corp.*,

No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citation and quotation

marks omitted).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's

jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists,

whereas the movant bears the burden of proof on a motion to dismiss under Rule

12(b)(6)."  *Id.* (citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340,

352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a

claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." (citation and quotation marks

omitted)).  This allocation of the burden of proof is the "only substantive difference" between the

standards of review under these two rules.  *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F.

Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (citation omitted).

    1.  Rule 12(b)(1)

    "A federal court has subject matter jurisdiction over a cause of action only when it has

authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233,

241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d

Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en

banc)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l*

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*,

561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)

(describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)

(quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))).  "In adjudicating a

motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may

consider matters outside the pleadings."  *JTE Enters. v. Cuomo*, 2 F. Supp. 3d 333, 338

(E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

    2.  Rule 12(b)(6)

    The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendant's Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [SAC]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). The Court must also "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[]

[the complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

### B.  Analysis

#### 1.  State Claims

New York law dictates that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice," including discrimination on the basis of disability, "shall have a cause of action in any court of appropriate jurisdiction . . . *unless* such person had filed a complaint hereunder or with any local commission on human rights . . . ."  N.Y. Exec. Law § 297(9) (emphasis added).  Courts have interpreted this to mean that "a party filing with the [New York State Division of Human Rights ("NYSDHR")] is precluded from pursuing his or her state

discrimination claim in [federal] court unless that claim is dismissed on the ground of

'administrative convenience.'"   *Nagle v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 67, 70

(S.D.N.Y. 1991); *see also York v. Ass'n of the Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir.

2002) ("Thus, by the terms of the statute . . ., the NY[S]HRL . . . claim[], once brought before

the NYSDHR, may not be brought again as a plenary action in another court." (citation

omitted)).

Here, Plaintiff filed a complaint with the NYSDHR, which contained an allegation of

discriminatory termination by Defendant based on Plaintiff's disability.  (*See* Am. Compl. ECF

8–14 ("NYSDHR Compl.") (Dkt. No. 15).)  The NYSDHR conducted an investigation and

concluded that there was no probable cause to support Plaintiff's discrimination claim because

"the record include[d] insufficient evidence of a nexus between [Defendant's] alleged conduct

and [Plaintiff's] disability."  (*See* Rushfield Aff'n Ex. C ("NYSDHR Order") 1 (Dkt. No. 41-

3).)[2]  The NYSDHR concluded that the record did not support Plaintiff's claim that Defendant

targeted Plaintiff for termination because of a disability; instead, the record suggested that

Plaintiff failed to provide medical verification for a significant portion of his medical absences.

---

[2] The Court may consider Plaintiff's filings with agencies and any subsequent agency determination when evaluating the instant Motion because they are all matters of public record. *See Troise v. SUNY Cortland NY*, No. 18-CV-734, 2019 WL 3817387, at *4 (N.D.N.Y. Aug. 14, 2019) (taking judicial notice of the plaintiff's NYSDHR complaint, NYSDHR determination, and EEOC's right-to-sue letter); *Sternkopf v. White Plains Hosp.*, No. 14-CV-4076, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015) (taking judicial notice of the plaintiff's complaint to the NYSDHR, a notice of charge from the EEOC, the NYSDHR's determination and order, and the EEOC's dismissal and notice of rights letter); *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (citation omitted)).  Moreover, Plaintiff also attached a copy of his NYSDHR filing with his Amended Complaint, (*see* NYSDHR Compl.), and "[a] complaint is . . . deemed to include any written instrument attached to it as an exhibit," *Sierra Club*, 911 F.3d at 88 (citation and quotation marks omitted).

(*See id*. at 2.)[3]  Therefore, the NYSDHR did not dismiss Plaintiff's NYSHRL claims on administrative convenience grounds, which is "a specific statutory instrument."  *York*, 286 F.3d at 127 n.2.  Accordingly, Defendant is correct that the Court lacks the jurisdiction to hear any NYSHRL claim of discriminatory termination and/or harassment, which are dismissed.  *See Vargas v. Reliant Realty*, No. 13-CV-2341, 2014 WL 4446165, at *8 (S.D.N.Y. Sept. 9, 2014) (barring NYSHRL discrimination and retaliation claims where they had already been adjudicated by the NYSDHR), *appeal dismissed*, No. 15-107 (2d Cir. Sept. 8, 2015); *Benson v. N. Shore-Long Island Jewish Health Sys*., 482 F. Supp. 2d 320, 325–26 (E.D.N.Y. 2007) (dismissing NYSHRL claim for lack of jurisdiction where the NYSDHR had issued a no-probable-cause determination on the same allegations of discrimination and retaliation as the ones present in the federal action); *see also Bleichert v. N.Y. State Educ. Dep't*, 793 F. App'x 32, 34–35 (2d Cir. 2019) (affirming dismissal of NYSHRL for lack of subject matter jurisdiction because the plaintiff's complaint acknowledged that the NYSDHR "found no probable cause on her claims" and noting the plaintiff's only recourse was to appeal to the Supreme Court of the State of New York (record citation and quotation marks omitted)).[4]

---

[3] Although Plaintiff checked off a box marking harassment under the "Acts of Discrimination" section of his NYSDHR claim form, (*see* NYSDHR Compl. ECF 10), the NYSDHR Order did not acknowledge or decide a harassment claim, (*see generally* NYSDHR Order).  The only other mention of harassment in the NYSDHR Complaint was one line where Plaintiff wrote that he feared returning to work "because it's a hostile work environment."  (*See* NYSDHR Compl. ECF 11.)

[4] The Court acknowledges that, at first glance, some conceptual tension exists between its holding that it has no jurisdiction over Plaintiff's *state* hostile work environment claim because it was raised in the NYSDHR Complaint and its holding that Plaintiff's *federal* hostile work environment claim is not administratively exhausted and procedurally barred because the state agency did not have reasonable notice to investigate such a claim.  (*See infra*, Section II.B.2.a.) However, this tension is resolved by clarifying that the subject-matter jurisdiction arguments against the *state* claims, which "refer[] to objections that are fundamental to the power of

2.  Federal Claims

a.  Exhaustion

"As a condition precedent to bringing a claim under the ADA, a plaintiff must show that she exhausted her administrative remedies."  *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 174 (E.D.N.Y. 2017) (citation omitted).  Exhaustion usually entails filing a charge before the EEOC or a complaint with a "[s]tate or local agency with authority to grant or seek relief

---

adjudication of a court," *Owens v. Starbucks Corp.*, 37 N.Y.S.3d 207 (Table), 2016 WL 1602753, at *3 (Sup. Ct. Apr. 21, 2016) (citation and quotation marks omitted), are materially different than the arguments regarding reasonable notice and administrative exhaustion against the *federal* claims.  The NYSHRL is very clear that *only* where a "local commission on human rights" dismisses a plaintiff's claims on "grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled" can the plaintiff bring subsequent suit in a court on the same claims.  N.Y. Exec. Law § 297(9).  Therefore, for NYSHRL claims, the "remedies of administrative review through the [NY]SDHR . . . or judicial review are *mutually exclusive*."  *Ramirez v. NYP Holdings, Inc.*, No. 18-CV-12058, 2020 WL 470011, at *4 (S.D.N.Y. Jan. 29, 2020) (emphasis in original) (alteration and quotation marks omitted) (quoting *Moodie v. Fed Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995)).  "The election of remedies . . . bar is expansive," and bars state claims even if the plaintiff attempts to raise a new legal theory or sue a different defendant in federal court.  *See id.* at *4–5; *see also Chakraborty v. Soto*, No. 16-CV-9128, 2017 WL 5157616, at *5 (S.D.N.Y. Nov. 6, 2017) ("The election-of-remedies doctrine cuts a wide swath: [i]t precludes the [c]ourt from hearing *any* claims that arise out of the events that formed the basis of [the p]laintiff's NYSDHR [c]omplaint." (emphasis in original)).

Here, because Plaintiff raised the issue of a hostile work environment, pursuant to the NYSHRL, in his NYSDHR Complaint, (*see* NYSDHR Compl. ECF 10–11), and because Plaintiff's NYSHRL claims were not dismissed on any of the articulated ground specified in New York Executive Law § 297(9), (*see* NYSDHR Order), this Court does not have subject matter jurisdiction to hear Plaintiff's state claims on that issue, to the extent he attempted to assert them here, *see Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 298–301 (S.D.N.Y. 2016) (dismissing the plaintiff's state employment discrimination claims on election-of-remedies grounds while also dismissing federal employment discrimination claims for being procedurally barred because they were not "reasonably related" to the grievances the plaintiff raised in her administrative grievances); *Clemmer v. Fordham Bedford Cmty. Servs.*, No. 14-CV-2343, 2015 WL 273657, at *3, *5 & n.2 (S.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's ADA claims because they were not reasonably related to grievances in the plaintiff's NYSDHR complaint while dismissing the plaintiff's state discrimination claims under the election-of-remedies doctrine and explaining that the "election of remedies bar is jurisdictional").

12

from such practice." *Sworn v. W. N.Y. Children's Psychiatric Ctr.*, 269 F. Supp. 2d 152, 158

(W.D.N.Y. 2003) (quotation marks omitted) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d

62, 82–83 (2d Cir. 2001)); *see also Soules v. Ct., Dep't of Emergency Servs. & Pub. Prot.*, 882

F.3d 52, 57 (2d Cir. 2018) (explaining that the plaintiff was required to exhaust administrative

remedies with the EEOC or the relevant state administrative agency); *Vargas*, 2014 WL

4446165, at *9 ("Under the ADA, . . . a plaintiff must file a charge of discrimination with the

EEOC prior to commencing an action for employment discrimination in federal court." (citation,

alteration, and quotation marks omitted)).   "In addition, the claimant must make the EEOC filing

within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a

'Notice of Right to Sue' letter from the EEOC." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69

(2d Cir. 2006) (citations omitted).   "[T]he purpose of the exhaustion requirement . . . is to give

the administrative agency the opportunity to investigate, mediate, and take remedial action."

*Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985).

        "Nonetheless, claims that were not asserted before the EEOC may be pursued in a

subsequent federal court action if they are 'reasonably related' to those that were filed with the

agency." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999).   Conduct is

reasonably related to conduct in an EEOC charge (or other qualifying administrative filing) if:

"[(1)] the claim would fall within the reasonably expected scope of an EEOC investigation of the

charges of discrimination; [(2)] it alleges retaliation for filing the EEOC charge; or [(3)] the

plaintiff alleges further incidents of discrimination carried out in precisely the same manner

alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (citation and

quotation marks omitted).   The first category "is essentially an allowance of loose pleading[,]

and is based on the recognition that EEOC charges frequently are filled out by employees

13

without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation, alteration, and quotation marks omitted). Failure to exhaust is not an argument regarding the court's jurisdiction but rather an affirmative defense, so "defendants bear the burden of showing non-exhaustion." *Novick v. Village of Wappingers Falls, N.Y.*, 376 F. Supp. 3d 318, 336 (S.D.N.Y. 2019) (citation omitted). But dismissal is appropriate on a motion to dismiss where the "failure to exhaust is clear from the face of the complaint (and incorporated documents)." *Id.* (citation and quotation marks omitted).

Here, as discussed above, Plaintiff filed a complaint with the NYSDHR. (*See* NYSDHR Compl.) Following the NYSDHR Order finding that there was no probable cause that Plaintiff was improperly terminated on the basis of his disability, the EEOC issued a "Dismissal and Notice of Rights" indicating that it was simply adopting the findings of the state or local fair employment agency, i.e., the NYSDHR. (*See* Am. Compl. ECF 15 ("EEOC Dismissal & Not. of Rights") (Dkt. No. 15).) The EEOC Dismissal and Notice of Rights also provided Plaintiff with notice that he may sue Defendant in federal or state court. (*See id.*)

Defendant argues that this Court may not consider any allegation that was not reasonably related to the allegations in Plaintiff's NYSDHR Complaint. (*See* Def.'s Mem. 10.) Defendant appears to make this argument in connection to both the federal claims for hostile work environment and failure to reasonably accommodate. (*See id.* at 11.) For both types of claims, only the first type of "reasonably related" conduct applies, because Plaintiff does not allege retaliation on the basis of any protected conduct and because Plaintiff was terminated from his job, preventing the possibility of any further purportedly discriminatory conduct.

14

As to the hostile work environment claim, in his agency complaint, Plaintiff wrote only that he feared returning to work because of a "hostile work environment" and checked off the box indicating that "harassment" was one of his claims of discrimination.  (*See* NYSDHR Compl. ECF 10–11.)  "In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [administrative complaint] itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  *Deravin*, 335 F.3d at 201 (citation and alteration omitted).  "[I]t is [the] substance of the charge and not its label that controls." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998).  "To give the EEOC [or other administrative agency] adequate notice of a hostile work environment claim, the [administrative complaint] must reference 'repeated conduct or the cumulative effect of individual acts' directed toward the plaintiff."  *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 437 (E.D.N.Y. 2010) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008)). Despite checking the box for "harassment," Plaintiff offered no factual allegations in his NYSDHR Complaint to suggest that harassment based on his disability was occurring.  (*See generally* NYSDHR Compl; *see also id*. at ECF 14.)  For example, Plaintiff made no mention of any demeaning comment or gesture at all, much less "repeated conduct."  *Morris*, 680 F. Supp. 2d at 437 (citation and quotation marks omitted).  Indeed, the NYSDHR Order did not address the question of workplace harassment at all.  (*See generally* NYSDHR Order.)  Therefore, Plaintiff has failed to properly administratively exhaust his hostile work environment claim, and is barred from raising it in this Court.  *See Mathirampuzha*, 548 F.3d at 77 (finding that the plaintiff failed to administratively exhaust hostile work environment claim where there was "no reference to repeated conduct or the cumulative effect of individual acts" in the original administrative complaint); *Ray v. N.Y. State Ins. Fund*, No. 16-CV-2895, 2018 WL 3475467, at

*7 (S.D.N.Y. July 18, 2018) (holding that the plaintiff failed to raise a hostile work environment claim in her administrative complaint even where plaintiff asserted "six discrete instances of maltreatment occurring over a five-year period" because "[a]llegations of these discrete incidents do not exhaust a . . . hostile work environment claim" (collecting cases)); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (finding gender-based hostile work environment claim not reasonably related to EEOC charge even where the charge did include "generalized assertions" about the work environment, such as statements that "women suffer blatant discrimination" and that "women have a difficult time fitting in" (record citation and quotation marks omitted)); *Allen v. St. Cabrini Nursing Home*, No. 00-CV-8558, 2001 WL 286788, at *4 (S.D.N.Y. Mar. 9, 2001) (explaining that the failure to allege any fact that supported race or color-based discrimination resulted in lack of exhaustion of those claims even though the relevant boxes were checked), *aff'd*, 64 F. App'x 836 (2d Cir. 2003).

The Court cannot agree, however, that Plaintiff's NYSDHR Complaint was not reasonably related to Plaintiff's failure to accommodate claim. It is true that Plaintiff's factual allegations are rather sparse in the NYSDHR Complaint. However, he did allege that he had a chronic injury, that he had historically received positive job reviews, that he *was* being "reasonably accommodated" for medical leaves related to his disability, and that, suddenly, he was terminated because of Defendant's "refusal to reasonably accommodate [his] disabilities." (*See* NYSDHR Compl. ECF 14.) This is enough to suggest that the remainder of the allegations in the SAC are within the "reasonably expected scope" of the agency's investigation. *Alfano*, 294 F.3d at 381 (citation omitted). A reasonable investigation would seek to find what had changed between the prior accommodations and Plaintiff's "sudden" termination, which could reasonably include questions such as whether Plaintiff's work circumstances or job duties had

changed; whether Plaintiff needed new types of accommodation; and whether Plaintiff had requested any specific accommodation. Plaintiff provides more color to his allegations in his SAC by explaining that his new job became significantly more physically strenuous because of new duties, (SAC ¶ 15), that this created more frequent flare-ups and required more medical absences, (*id.* ¶¶ 16, 34–35), and that leadership refused to acknowledge or consider requests from his physician for lighter duties, (*id.* ¶ 33). But none of these new details so materially changes the *nature* of his grievances such that the NYSDHR Complaint could not have reasonably led to an investigation encapsulating them.

Because the first category of "reasonably related" claims is meant to avoid a "stringent pleading rule [that] might trap unwary [and uncounseled] grievants into an overly narrow theory of their cases," the Court is hesitant to hold that Plaintiff was obligated to be more specific than the allegations and descriptions in his NYSDHR Complaint to properly exhaust his reasonable accommodation claim. *Choi v. Chemical Bank*, 939 F. Supp. 304, 312 (S.D.N.Y. 1996) (citation omitted). "Moreover, since the [administrative complaint] merely serves to alert the [agency] to the discrimination from which Plaintiff is allegedly suffering, so that the agency can investigate and attempt a conciliation, . . . neither the agency nor [D]efendant[ is] prejudiced by this 'loose pleading' standard." *Id.* (citations omitted). Although the Court recognizes that allegations "lack[ing] in factual specificity may not serve as jurisdictional predicates," *id.*, here, the allegations in the NYSDHR Complaint would have reasonably led investigators to consider the details Plaintiff alleges in the SAC. By contrast, in *Choi*, the plaintiff alleged a single incident of discrimination based on a failure to promote. *Id.* at 312. The court there noted that the NYSDHR reasonably only investigated the circumstances surrounding the sole promotion decision and concluded that race and national origin-based biases did not play a role. *See id.*

17

The court was unwilling to expand this single allegation to encompass other discrete incidents that were omitted by the plaintiff in his original administrative complaint.  *See id.* at 312–13.  Unlike other plaintiffs who may have attempted to "expand the scope of the [administrative complaint] to include . . . claims [that] encompass new unlawful practices not specified in the text of the [administrative complaint]," here, Plaintiff simply has "clarif[ied] or amplif[ied] allegations" pertaining to the "subject matter of the original" administrative complaint.  *Crespo v. N.Y.C. Transit Auth.*, No. 01-CV-671, 2002 WL 398805, at *9 (E.D.N.Y. Jan. 7, 2002) (citations and quotation marks omitted).  Indeed, Plaintiff has consistently made allegations about the same purported incident of discrimination—Defendant's lack of reasonable accommodation and eventual termination of Plaintiff based on his disability.[5]

---

[5] Defendant's other cited cases are also distinguishable.  For example, in *Smith v. City of New York*, 385 F. Supp. 3d 323 (S.D.N.Y. 2019), the court held that the plaintiff's failure to accommodate claim was not exhausted because it lacked allegations that the plaintiff "requested a different assignment" and/or that the defendant "failed to accommodate that request."  *Id.* at 348.  However, in that case, the majority of the plaintiff's EEOC charge "alleged discrimination on the basis of *race*, not disability."  *Id.* (emphasis added).  Therefore, the throwaway assertion that the unfavorable assignment was additionally "unduly difficult due to [the plaintiff's] sleep apnea" was insufficient to reasonably tie the EEOC's race discrimination investigation to a disability discrimination investigation as well.  *Id.*  Here, Plaintiff has clearly indicated in his NYSDHR Complaint that his disability and the Defendant's "refusal to reasonably accommodate" it were the central issues.  (*See* NYSDHR Compl. ECF 10, 14.)

*Fleming* supports Defendant's arguments that Plaintiff's allegations regarding his hostile work environment claim were too vague to reasonably trigger an investigation, but it does not support the proposition that Plaintiff needed more detail regarding his failure to accommodate claim than what exists here.  *See* 419 F. Supp. 2d at 464.

*Difillipo v. Special Metals Corporation*, No. 13-CV-215, 2016 WL 4621087 (N.D.N.Y. Sept. 6, 2016), *appeal withdrawn*, No. 16-3414, 2017 WL 4570396 (2d Cir. Apr. 27, 2017), similarly dismissed a hostile work environment claim that was not reasonably related to the underlying EEOC charge, but only dismissed a discrete disability discrimination claim because it was already covered and settled by a conciliation agreement, which is not alleged here.  *See id.* at *11–12.  Moreover, the court pointed out that the plaintiff had made no mention of the injury alleged to be the basis of her disability in her administrative complaint.  *See id.* at *10.  Here, Plaintiff clearly mentioned the nature of his disability in his administrative complaint.  (*See* NYSDHR Compl. ECF 14 ("I have been partially disabled . . . since November 4, 2003, based

Accordingly, the Court declines to dismiss Plaintiff's failure to reasonably accommodate

claim on the grounds of administrative exhaustion.  *See Cadoret v. Sikorsky Aircraft Corp.*, 323

F. Supp. 3d 319, 327–28 (D. Conn. 2018) (explaining that a plaintiff is "not required to articulate

every potential legal theory which could arise from the allegations in his [administrative

complaint]" and holding that the plaintiff's allegations that he was denied an interpreter on

multiple occasions were sufficient to exhaust a claim based on denials of equal benefits and

privileges (citation omitted)); *Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc.*, No. 15-CV-

7710, 2017 WL 1194686, at *12 (S.D.N.Y. Mar. 30, 2017) ("Here, the source of the

discrimination that led to the [termination] was the same discrimination that the [NYSDHR]

investigated, and investigation of this [termination] would have fallen within the scope of the

[NYSDHR] investigation that could reasonably have been expected to grow out of the charge of

discrimination." (citation and quotation marks omitted)); *Coffey v. Cushman & Wakefield, Inc.*,

No. 01-CV-9447, 2002 WL 1610913, at *6 (S.D.N.Y. July 22, 2002) (finding that a claim of

constructive discharge was reasonably related to sex and age discrimination claims made in the

---

on the disability of advanced avascular necroses, which has caused ongoing pain to my ankle, knee, and hip.").)

 *Byrne v. Telesector Resources Group, Inc.*, No. 04-CV-76, 2005 WL 464941 (W.D.N.Y. Feb. 25, 2005), *aff'd*, 339 F. App'x 13 (2d Cir. 2009), also dismissed a hostile work environment claim for failure to exhaust because of the vagueness of the allegations in the administrative complaint but only dismissed the disparate treatment claim because the EEOC investigation concluded that the incident was outside of the statute of limitations, an issue that is not present here.  *See id.* at *8–9.

 Like *Choi*, *Constance v. Pepsi Bottling Co. of NY*, No. 03-CV-5009, 2007 WL 2460688 (E.D.N.Y. Aug. 24, 2007), held that the plaintiff failed to exhaust other failure to promote claims where his administrative complaint only alleged one such instance.  *See id.* at *9.  Here, the incident complained of within the NYSDHR Complaint is the same incident underlying Plaintiff's SAC.

plaintiff's original EEOC complaint because the plaintiff alleged the "same discrimination" in her federal pleading and was "terminated before she filed her EEOC charge").

> b.  Failure to Accommodate Claim

Defendant also argues that Plaintiff fails to state a failure to accommodate claim.  (*See* Def.'s Mem. 14.)

"Discrimination in violation of the ADA includes, inter alia, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'"  *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)).  Accordingly, an ADA plaintiff can establish a prima facie claim of disability discrimination based on the failure to accommodate a disability by proving the following elements: "(1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (citation omitted).  Once a plaintiff has established a prima facie case, the burden shifts to the defendant to show "(1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue."  *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (citation omitted).  Plaintiff must plead sufficient facts to raise the inference "that the failure was motivated by discriminatory intent."  *Lyman v. City of New York*, No. 01-CV-3789, 2003 WL 22171518, at *6 (S.D.N.Y. Sept. 19, 2003) (citation and quotation marks omitted); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 258 (S.D.N.Y. 2014) ("[A] plaintiff is required to

provide evidence that the delay was motivated by an employer's discriminatory intent, as opposed to mere negligence." (collecting cases)).

Defendant does not appear to contest that Plaintiff's alleged disability qualifies for protection under the ADA, so the Court assumes for the purpose of the instant Motion that Plaintiff is disabled under the meaning of the statute.  Defendant instead argues that Plaintiff's claim fails because his allegations suggest that he could not have performed the essential functions of his position as a safety monitor even with accommodation for his disability.  (*See* Def.'s Mem. 15–16.)

Here, Plaintiff alleges that he qualified as disabled in 2005, (SAC ¶ 4), but continued to successfully perform his job and receive good reviews despite taking time off for medical reasons, (*id*. ¶¶ 6–8, 17).  Beginning in 2016, Plaintiff was assigned "additional responsibilities" that required him to walk around more and go up and down stairs, which "exacerbated" his condition.  (*Id*. ¶ 16.)  Plaintiff, with support from his doctors, requested what he perceived to be a reasonable accommodation—i.e., being assigned to smaller areas to monitor—but Defendant never responded to this request.  (*Id*. ¶¶ 33–35.)  As a result, Plaintiff experienced more flare-ups than before and was eventually terminated for "excessive absences."  (*Id*. ¶¶ 34, 36.)  When read with the special solicitude and favorable pleading standards afforded to pro se plaintiffs, the Court concludes that these allegations are sufficient to state a failure to accommodate claim.

Defendant mistakenly focuses on the argument that Plaintiff's inability to attend work made it impossible to reasonably accommodate his disability.  (*See* Def.'s Mem. 15.)  It is true that the law acknowledges that "some degree of regular, predictable attendance is fundamental to most jobs."  *Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) (citation and quotation marks omitted).  But it is far from obvious whether Plaintiff's accommodations made

his attendance fall below that standard.  It is not clear from the face of the SAC that the medical

leaves Plaintiff required were so pervasive that he could not "get to work" and thereby "satisfy

the essential requirements of [his] employment."  *Id.* (citation omitted).  Indeed, Plaintiff alleges

that similar requests for time off had been previously accommodated for years, and that he had

received favorable employment reviews even with his disability.  (SAC ¶¶ 17–19, 21.)  In any

event, this question would be more appropriately addressed at summary judgment, as many of

Defendant's cited cases did.  *See Aquinas*, 940 F. Supp. at 78–79 (awarding summary judgment

to the defendant because "the *record* establishe[d] that [the plaintiff's] . . . rate of absenteeism

was . . . unacceptable under existing company standards" (emphasis added) (record citation

omitted)); *see also Rinaldi v. Quality King Distribs., Inc.*, 29 F. Supp. 3d 218, 227–28 (E.D.N.Y.

2014) (granting summary judgment to the defendant where the record showed the plaintiff was

absent for "five out of six weeks" during one period and the plaintiff failed to "propose or even

accept a reasonable accommodation" that would have helped her attend work more regularly);

*Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, No. 08-CV-1948, 2011 WL

4526520, at *1, *4–5 (S.D.N.Y. Sept. 28, 2011) (explaining that the record at summary judgment

showed that the plaintiff, a special education teacher, had been absent 44 days during one school

year and 35 days during another six-month period, in addition to engaging in misconduct, such

as using profanity with students, being hostile to and argumentative with other teachers, and

falling asleep during class); *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 281–82

(E.D.N.Y. 1999) (granting summary judgment to defendant where the medical leaves of absence

at issue "stretch[ed] beyond a year" in duration and the plaintiff had "been absent 23 of the

previous 28 months" (citation omitted)), *aff'd*, 205 F.3d 1323 (2d Cir. 1999).  Nothing as

detailed as the records in Defendant's cited cases (or as persuasive as the additional factors in

some of them) is available to the Court at this point in this Action.  Moreover, Defendant's

argument fails to address the allegation that Defendant's failure to accommodate or even respond

to Plaintiff's request for smaller monitoring areas is what partially *caused* his additional absences

in recent years, and that, with proper accommodation, Plaintiff would have needed less time off

work.  (*See* SAC ¶¶ 16, 33–35.)  Plaintiff was only required to make "a facial showing that some

effective accommodation exist[ed] that would [have] render[ed him] otherwise qualified," and

Plaintiff has done that sufficiently to survive the pleading stage here.  *Aquinas*, 940 F. Supp. at

79 (citations and quotation marks omitted); *see also Borkowski v. Valley Cent. Sch. Dist.*, 63

F.3d 131, 141 (2d Cir. 1995) (noting that, even at summary judgment, "once the plaintiff has

introduced evidence that an accommodation exists that permits her to perform the job at the same

level as a non-disabled employee, a fact question has been created" (citation omitted)); *Novick*,

376 F. Supp. 3d at 338–39 (denying motion to dismiss where the plaintiff's "request to be placed

at headquarters" was a "plausible accommodation, the costs of which, facially, do not clearly

exceed its benefits" (citation and quotation marks omitted)); *Connors v. Certified Mktg. Servs.,

Inc.*, No. 04-CV-1274, 2005 WL 8169553, at *6 (N.D.N.Y. Apr. 14, 2005) (declining to grant

summary judgment to the defendant and explaining that where "the costs of the accommodation

do not clearly outweigh the benefits, the [p]laintiff has met the burden of production that the

proposed accommodations are reasonable" (citation omitted)).[6]

---

[6] Once Plaintiff has identified a facially reasonable accommodation, Defendant bears the burden of "persuading the factfinder that the [p]laintiff's proposed accommodation is unreasonable."  *Borkowski*, 63 F.3d at 138.  Additionally, because "the ADA places a duty on employers to ascertain whether there are some jobs that the employee might be qualified for," *Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 655 (S.D.N.Y. 2001) (citation omitted), *aff'd*, 324 F.3d 102 (2d Cir. 2003), the factfinder will need to determine whether there was truly no other available position at school that Plaintiff was qualified to perform—especially given that he spent nearly a decade of his career sufficiently performing safety monitor duties with his

Defendant also argues, in a footnote, that it was not obligated to create a "light duty" position for Plaintiff to accommodate his disability. (*See* Def.'s Mem. 14 n.5.) This, again, does not rebut Plaintiff's allegations that his disability could have been accommodated by simply being assigned smaller areas to monitor or by continuing to accommodate the resultant necessary medical leaves, which were previously being accommodated with sufficient documentation. There is nothing in the record to demonstrate how many safety monitors existed at the school, how easy or difficult it would be to shift assignments, or whether accommodating Plaintiff would require creating a new, "light duty" position. *Cf. Garvey v. Town of Clarkstown, N.Y.*, No. 13-CV-8305, 2018 WL 1026379, at *12 (S.D.N.Y. Feb. 22, 2018) (explaining that the record at summary judgment showed that a "light-duty position" that was specifically created for another individual pursuant to a settlement agreement was not necessarily available for the plaintiff to fill given that the department's "usual state" operated without any "light duty" assignment), *aff'd sub nom.*, *Garvey v. Sullivan*, 773 F. App'x 634 (2d Cir. 2019); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 291–92 (S.D.N.Y. 2004) (granting summary judgment for the defendant where "the record clearly demonstrate[d] that [light-duty] positions do not exist in the [defendant's] police department"). Plaintiff himself does not even allege that Defendant should have created a separate, light-duty position for him in order to accommodate his disability. (*See generally* SAC.) Therefore, this argument also fails. Accordingly, the Court denies Defendant's Motion To Dismiss Plaintiff's failure to accommodate claim for failure to state a claim.

---

disability. At this stage, however, Defendant cannot introduce evidence that the proposed accommodation is unreasonable and imposes an undue hardship. Defendant thus cannot meet its burden based on the allegations in the SAC, or any other material that can be considered at this stage.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted as to Plaintiff's NYSHRL claims and federal hostile work environment claim.[7]  Despite Plaintiff's pro se status, the Court declines to provide him with the opportunity to amend again.  The federal hostile work environment claim has been deemed procedurally barred, and is therefore dismissed with prejudice.  The state claims are dismissed for lack of subject-matter jurisdiction, and "Article III deprives federal courts of the power to dismiss [them] with prejudice," so the Court must dismiss them without prejudice, but declines to provide Plaintiff with an opportunity to amend at this point in the Action.  *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017) (citation, alteration, and quotation marks omitted) (remanding a case to the district court and instructing it to enter dismissal without prejudice); *Chakraborty*, 2017 WL 5157616, at *9 (applying the principle to state discrimination claims dismissed for similar reasons).  Instead, the Action will proceed on Plaintiff's federal failure to accommodate claim only.  The Court will hold a status conference on August 20, 2020, at noon.

---

[7] Because the Court agreed that it lacked the jurisdiction to hear Plaintiff's state claims, it does not address Defendant's arguments regarding the timeliness of Plaintiff's state claims under New York Education Law or his failure to plead the filing of a notice of claim.  (*See* Def.'s Mem. 8–9.)  And because the Court dismissed Plaintiff's federal hostile work environment claim for failure to administratively exhaust, it also does not address Defendant's arguments regarding the merits of the claim as pled in the SAC.  (*See id.* at 13–14.)

The Clerk is respectfully directed to terminate the pending Motion, (Dkt. No. 40), and

mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:          July 2, 2020
               White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE